**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
E-mail: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PEDRO MARTINEZ, Individually and as the
representative of a class of similarly situated persons,

                                               Case No. 24-cv-8252

                  Plaintiff,

         - against -

                                      **CLASS ACTION COMPLAINT**

 GATEWAYCDI, INC. and BRAND ADDITION,
LLC,

                  Defendants.
----------------------------------------------------------X

### INTRODUCTION

    1. Plaintiff, Pedro Martinez ("Plaintiff" or "Martinez"), brings this action on behalf of himself and all other persons similarly situated against Gatewaycdi, Inc. and Brand Addition, LLC (hereinafter jointly referred to as "Gatewaycdi" or "Defendants"), and states as follows:

    2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

    3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

1

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Gatewaycdi for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendants is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Gatewaycdi provide to their non-disabled customers through http//:www.Theintelstore.com (hereinafter "Theintelstore.com" or "the website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Theintelstore.com provides to the public a wide array of the information, services, and other programs offered by Gatewaycdi. Yet, Theintelstore.com contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Gatewaycdi excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to browse, shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with Defendants' website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendants has chosen to rely on an exclusively visual interface.  Gatewaycdi's sighted customers can independently browse, select, and shop online without the assistance of others.  However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Theintelstore.com.

8. By failing to make the website accessible to blind persons, Defendants is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.  Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of the District Tee, the Unisex Moss Carhartt Full Zip Sweatshirt, and the 15 oz. Campfire Mug for delivery to his home on Theintelstore.com.  However, unless Defendants remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a transaction on Theintelstore.com.

11. Because Defendants' website, Theintelstore.com, is not equally accessible to blind and visually-impaired consumers, it violates the ADA.  Plaintiff seeks a permanent injunction to cause a change in Gatewaycdi's policies, practices, and procedures so that Defendants' website

will become and remain accessible to blind and visually-impaired consumers.  This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.  See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendants conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendants is registered to do business in New York State and has been conducting business in New York State, including in this District.  Defendants maintains Brick-and-mortar places of accommodation in this District which are subject to personal jurisdiction in this District.  Defendants also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing

4

injury to consumers in this District.  A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## PARTIES

16. Plaintiff, is and has been at all relevant times a resident of Kings County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, Pedro Martinez, cannot use a computer without the assistance of screen reader software.  Plaintiff, Pedro Martinez, has been denied the full enjoyment of the facilities, goods and services of Theintelstore.com, as well as to the facilities, goods and services of Defendants' brick and mortar locations, as a result of accessibility barriers on Theintelstore.com.

18. Defendant, Gatewaycdi, Inc., is a Missouri Foreign business corporation doing business in this State with a principal place of business located at 707 N. 2nd Street, St. Louis, MO 63102. Upon information and belief, Gatewaycdi sells Intel branded merchandise under license from Intel.

19. Defendant, Brand Addition, LLC, is a Missouri Foreign limited liability company doing business in this State with a principal place of business located at 707 N. 2nd Street, St. Louis, MO 63102. Upon information and belief, Gatewaycdi sells Intel branded merchandise under license from Intel

19. Defendants own and operate Intel Stores (hereinafter, "Intel Stores" or "Stores"), which are a place of public accommodation.

20. Intel Stores provide to the public important and enjoyable goods and services including the ability to browse and purchase a variety of Intel branded products including

apparel, technology products, gifts and memorabilia, promotional and education material, and related products which are offered for sale at the Stores. Defendants also provide to the public a website known as Theintelstore.com which provides consumers with access to an array of goods and services offered to the public by Intel Stores, including, the ability to learn about the products offered for sale at the Intel Store locations, make purchases for home delivery, view promotions, and obtain information about the Stores' location and hours – all with the click of a mouse.

21. Defendants' location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendants' website is a service, privilege, or advantage that is heavily integrated with Defendants' physical Stores and operates as a gateway thereto.

## NATURE OF THE CASE

22. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

23. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

24. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

25. Blind users of Windows operating system-enabled computers and devises have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

26. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

27. Defendants operate Intel Stores which are located throughout the country and provide the ability to browse and purchase Intel branded products including apparel, technology products, gifts and memorabilia, promotional and education material, and related products.

7

28. Theintelstore.com is a service and benefit offered by Gatewaycdi in New York State and throughout the United States. Theintelstore.com is owned, controlled and/or operated by Gatewaycdi.

29. Theintelstore.com is a commercial website that offers products and services for online browsing and sale that are available in Intel Stores. The online Stores allows the user to view and learn about the products and services offered for sale at the Intel Store locations, make purchases, view promotions, and obtain information about the Stores' location and hours, and perform a variety of other functions.

30. Among the features offered by Theintelstore.com are the following:

(a) learning Store information including, allowing persons who wish to visit the Stores to learn their locations, hours of operation, and phone numbers;

(b) an online store, allowing customers to purchase Intel branded products including apparel, apparel, technology products, gifts and memorabilia, promotional and education material, and related products for delivery to their doorstep, and

(c) learning about the company and its story, learning about career opportunities, and learning about the benefits of the products.

31. This case arises out of Gatewaycdi's policy and practice of denying the blind access to Theintelstore.com, including the goods and services offered by Intel Stores through Theintelstore.com. Due to Gatewaycdi's failure and refusal to remove access barriers to Theintelstore.com, blind individuals have been and are being denied equal access to Intel Stores, as well as to the numerous goods, services and benefits offered to the public through Theintelstore.com.

32. Gatewaycdi denies the blind access to goods, services and information made available through Theintelstore.com by preventing them from freely navigating Theintelstore.com.

33. Theintelstore.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

34. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Theintelstore.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind Theintelstore.com customers are unable to determine what is on the website, browse the website or investigate Intel Stores' web pages.

35. Theintelstore.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as Theintelstore.com, these forms include search fields to select products, fields to select size, color, and quantity, and search fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendants' products, nor can they enter their personal identification and financial information with confidence and security.

36. Plaintiff and the class of visually-impaired encountered the following additional specific problems when visiting Theintelstore.com: Using screen-reading software known as JAWS, Plaintiff and the class of blind visitors to the Website:

- Plaintiff was unable to access the skip to content button and the search option. Consequently, accessing individual products was virtually impossible and at best, significantly time-consuming and burdensome.
- Plaintiff was unable to access the Shopping Cart. The Shopping Cart link is announced as [number] link," so Plaintiff and other blind screen reader users would NOT know its purpose.
- Plaintiff was unable to access the 'Account/Sign In' link. The link is completely SKIPPED OVER when navigating through the navigation region.
- Plaintiff was unable to access any products offered for sale. The mouse over drop-down links that horizontally span the top of the homepage cannot be activated with a screen reader and are simply announced as "links." When a sighted person hovers their mouse over the words APPAREL, OFFICE, and COLLECTIONS, a drop-down list of subcategories of merchandise appears and can be activated with the click of a mouse. However, Plaintiff and other blind persons who visit the website are unable to activate any of the links and cannot access any of the subcategories or any of the products that are sold on the website. This is a critical error.
- Plaintiff was unable to access the message displayed in a dialog box on the homepage upon first entering the site regarding store closure and shipping times. This critical message is NOT announced.
- Plaintiff was unable to access the links in the carousel on the homepage (directly below the navigation region). These links are NOT labeled and Plaintiff simply heard them announced as "link." He did NOT know their purpose or destination.
- Plaintiff was unable to determine the price of any product that was on sale. Original and sale prices for items are differentiated visually but NOT verbally. Sighted visitors can see that the original price for an item is crossed out and the sale price is bolded. However, for Plaintiff and other blind screen reader users, navigation moves focus over both prices at once. There is NO distinction made between the two prices.
- Plaintiff was unable to access the Size Charts. Size charts are NOT accessible as the 'View Size Chart' link on product pages opens a pop-up which is NOT announced and NOT accessible at any point. Additionally, size charts CANNOT be accurately read as navigation moves focus through size charts row by row, establishing NO correlation between intersecting rows and columns.
- It is impossible to add an item to the shopping cart in this Website. When Plaintiff clicked on Add to Cart, he did not receive a verbal notification that the product was added to the shopping cart.  In fact, there was no notification at all. Plaintiff and other

screen reader users will assume that the Add to Cart button does not function and that items cannot be added to the shopping cart.  Sighted visitors to the website can see a dialog box appear from the right side of the screen when selecting Add to Cart. However, focus does not move into this dialog box and consequently, Plaintiff and other blind customers are not aware of the dialog box and cannot proceed to checkout. This is a critical error.

- Plaintiff was unable to complete the checkout process because she did not receive error notification. If a checkout form is submitted with errors, sighted visitors see that the system responds by highlighting each problematic field in red and it included an error message in each field, but no announcement is made. Plaintiff and other screen reader users do not hear that errors are present, nor do they hear that the form wasn't submitted. Consequently, they are unable to complete the checkout process.

Consequently, Plaintiff and other blind customers are essentially prevented from browsing or purchasing any items on Theintelstore.com.

37. Theintelstore.com lacks accessible image maps.  An image map is a function that combines multiple words and links into one single image.  Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website.  For an image map to be accessible, it must contain alt-text for the various "hot spots."  The image maps on Theintelstore.com do not contain adequate alt-text and are therefore inaccessible to Plaintiff and other blind persons attempting to make online purchases.

38. Moreover, the lack of navigation links on Defendants' website makes attempting to navigate through Theintelstore.com even more time consuming and confusing for Plaintiff and blind consumers.

39. Theintelstore.com requires the use of a mouse to complete a transaction.  Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another.  Thus,

Theintelstore.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on Theintelstore.com.

40. Due to Theintelstore.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at a GATEWAYCDI Store. Some blind customers may require a driver to get to the Stores or require assistance in navigating the Stores. By contrast, if Theintelstore.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendants' website in an attempt to reach the desired service. Thus, Theintelstore.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on Theintelstore.com.

41. Theintelstore.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Theintelstore.com and who would otherwise be able to fully and equally enjoy the benefits and services of Intel Stores in New York State.

42. Plaintiff, Pedro Martinez, has made numerous attempts to complete a purchase on Theintelstore.com, most recently on October 16, 2024, October 27, 2024, and November 15, 2024, but was unable to do so independently because of the many access barriers on Defendants' website. These access barriers have caused Theintelstore.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers

12

experienced, Plaintiff was unable to make an online purchase of the District Tee, the Unisex

Moss Carhartt Full Zip Sweatshirt, and the 15 oz. Campfire Mug for delivery to his home.

43. Moreover, Plaintiff intends to return to the Website in the future if it becomes

accessible in order to purchase additional Intel branded products for delivery to his doorstep.

Plaintiff has always been intrigued by high tech and computers. Even now, Plaintiff is an expert

user of computers. Plaintiff has enjoyed learning about and using computers ever since he was a

child in the late 1970s. Plaintiff became blind at age 13 in 1987, but vividly recalls the days of

early computer innovation and its corporate leaders – Microsoft, Intel, Motorola, and many other

leading high-tech companies. In the last few years, Plaintiff has become more nostalgic and

interested in gathering memorabilia related to his childhood memories, especially the ones

related to computers and emerging technology. Plaintiff likes to wear apparel with corporate

logos, especially those that remind him of his childhood. While searching the Internet for Intel

merchandise, Plaintiff came across Defendants' website and was eager to purchase some

memorabilia and merchandise that reminded him of his youth and of one of America's greatest

companies. Unfortunately, Defendants' website was not accessible and continues to be

inaccessible, thereby deterring Plaintiff from making purchases on the site. Plaintiff likes that

Defendants sells licensed merchandise and that they carry a full range of products for Intel fans

of all ages made with high quality materials and include custom and exclusive products. If the

website was accessible, Plaintiff would return to the website to explore other Intel memorabilia

products including apparel, bags, home décor, drinkware, office supplies, and many other

branded Intel products which are sold on the website and which are currently not accessible to

Plaintiff and other blind consumers. Plaintiff has bought similar items from other (accessible)

online vendors in the past. However, since Defendants' products and selection are unique and

exclusive, Plaintiff would like to return to the website to make additional purchases once the

website becomes accessible, including the new products which are regularly added to the website. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortal locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc*., 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during August, September, and October, 2024 without success and will definitely make purchases of additional products, including different apparel and new products which are sold on the website and which currently cannot be purchased by blind persons.

44. As described above, Plaintiff has actual knowledge of the fact that Defendants' website, Theintelstore.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

45. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Theintelstore.com and Intel Stores.

46. Defendants engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

14

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

47. Defendants utilize standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

48. Because of Defendants' denial of full and equal access to, and enjoyment of, the goods, benefits and services of Theintelstore.com and Intel Stores, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

49. Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Theintelstore.com and as a result have been denied access to the enjoyment of goods and services offered in Intel Stores, during the relevant statutory period."

50. Plaintiff seeks certification of the following New York subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access Theintelstore.com and as a result have been denied access to the enjoyment of goods and services offered in Intel Stores, during the relevant statutory period."

51. There are hundreds of thousands of visually-impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually-impaired. *Id*. Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

52. This case arises out of Defendants' policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Theintelstore.com and Intel Stores. Due to Defendants' policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse, select and shop on Theintelstore.com and by extension the goods and services offered through Defendants' website to Intel Stores.

53. There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether Theintelstore.com is a "public accommodation" under the ADA;

(b) Whether Theintelstore.com is a "place or provider of public accommodation" under the laws of New York;

(c) Whether Defendants, through their website, Theintelstore.com, deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

(d) Whether Defendants, through their website, Theintelstore.com, deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of New York.

54. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Gatewaycdi

has violated the ADA, and/or the laws of New York by failing to update or remove access barriers on their website, Theintelstore.com, so it can be independently accessible to the class of people who are legally blind.

55. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class.  Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

56. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

57. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

58. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION
(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

59. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 58 of this Complaint as though set forth at length herein.

60. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

61. Intel Stores located in New York State is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(B). Theintelstore.com is a service, privilege or advantage of Intel Stores. Theintelstore.com is a service that is by and integrated with the Stores.

62. Defendants are subject to Title III of the ADA because they own and operate Intel Stores.

63. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

64. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

65. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to

afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

66. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

67. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

68. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Intel Stores who are blind have been denied full and equal access to Theintelstore.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

69. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

70. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Theintelstore.com and Intel Stores in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

71. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

72. The actions of Defendants were and are in violation of the ADA, and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

73. Plaintiff is also entitled to reasonable attorneys' fees and costs.

74. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 *et seq*.))

75. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 74 of this Complaint as though set forth at length herein.

76. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

20

77. Intel Stores located in New York State is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).  Theintelstore.com is a service, privilege or advantage of Intel Stores.  Theintelstore.com is a service that is by and integrated with the Stores.

78. Defendants are subject to the New York Human Rights Law because they own and operate Intel Stores and Theintelstore.com.  Defendants is a person within the meaning of N.Y. Exec. Law. § 292(1).

79. Defendants are violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to Theintelstore.com, causing Theintelstore.com and the services integrated with Intel Stores to be completely inaccessible to the blind.  This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendants make available to the non-disabled public.

80. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

81. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

82. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

83. Defendants' actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendants have:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

84. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

85. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Theintelstore.com and Intel Stores under N.Y. Exec. Law § 296(2) *et seq*. and/or its implementing regulations.  Unless the Court enjoins Defendants

from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

86. The actions of Defendants were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

87. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

88. Plaintiff is also entitled to reasonable attorneys' fees and costs.

89. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### **THIRD CAUSE OF ACTION**
(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.))

90. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 89 of this Complaint as though set forth at length herein.

91. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

92. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons.  No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

93. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

94. Intel Stores located in New York State is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).  Theintelstore.com is a service, privilege or advantage of Intel Stores.  Theintelstore.com is a service that is by and integrated with the Stores.

95. Defendants are subject to New York Civil Rights Law because they own and operate Intel Stores and Theintelstore.com.  Defendants are a person within the meaning of N.Y. Civil Law § 40-c(2).

96. Defendants are violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to Theintelstore.com, causing Theintelstore.com and the services integrated with Intel Stores to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendants make available to the non-disabled public.

97. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

98. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

99. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the Defendants shall reside . . ."

100. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

101. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

102. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq*. for each and every offense.

## FOURTH CAUSE OF ACTION
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq*.)

103. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 102 of this Complaint as though set forth at length herein.

25

104. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

105. Intel Stores located in New York State is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9). Theintelstore.com is a service, privilege or advantage of Intel Stores. Theintelstore.com is a service that is by and integrated with the Stores.

106. Defendants are subject to City Law because they own and operate Intel Stores and Theintelstore.com. Defendants are a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

107. Defendants are violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Theintelstore.com, causing Theintelstore.com and the services integrated with Intel Stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendants makes available to the non-disabled public. Specifically, Defendants are required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

108. Defendants' actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendants has:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

109. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

110. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Theintelstore.com and Intel Stores under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

111. The actions of Defendants were and are in violation of City law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

112. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

113. Plaintiff is also entitled to reasonable attorneys' fees and costs.

114. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
(Declaratory Relief)

115. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 114 of this Complaint as though set forth at length herein.

116. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants denies, that Theintelstore.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Theintelstore.com and by extension Intel Stores, which Gatewaycdi owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

117. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a)    A preliminary and permanent injunction to prohibit Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

28

b)  A preliminary and permanent injunction requiring Defendants to take all the steps necessary to make its website, Theintelstore.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Theintelstore.com is readily accessible to and usable by blind individuals;

c)  A declaration that Defendants own, maintain and/or operate the website, Theintelstore.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

d)  An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e)  An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f)  Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g)  Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h)  For pre- and post-judgment interest to the extent permitted by law; and

i)  For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
        November 27, 2024

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*
   Dan Shaked, Esq.

14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com